CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2020 OCT 20  PH 1: 33

DEPUTY CLERK_____

THE UNTIED STATES DISTRICT COURT
FOR THE DISTRICT OF TEXAS

## ORIGINAL

| | |
|---|---|
| PETER GARCIA, | Case No. _____ |
| Petitioner, | 3:20CV3194-X |
| vs. | COMPLAINT |
| THE DELTA COMPANIES | 1) Age Discrimination in Employment, 29 U.S.C. § 621 *et seq* |
| Respondent | 2) Defamation |
| | 3) Fraud |

*Demand for a Jury Trial*

## NATURE OF THE ACTION

This is an action under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et. seq.*, as amended, ("ADEA") to correct unlawful employment practices on the basis of age, redress interference with rights protected under the ADEA and provide Dr. Peter Garcia appropriate relief who was adversely affected by such practices.

Petitioner, Peter Garcia, M.D., (Garcia) by way of this complaint alleges Respondent, Delta Physician Placement, (Delta) discriminated against him based on his age in willfully failing to refer Garcia for employment in a manner which accurately portrayed his skills. Garcia is an experienced board certified physician with an extensive work history in clinical and administration medicine.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.

2.  This court has jurisdiction of the federal claims under 28 U.S.C. §1331. This court has jurisdiction over the state law claims pursuant to the doctrine of supplement jurisdiction, 28 U.S.C. 1367(a).

3.  This action is also authorized and instituted pursuant to Section 7(b) of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §  626(b) (the "ADEA"), which incorporates by reference Sections 16(c) and 17 of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§ 216(c) and 217.  The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Northern Texas.

<u>PARTIES</u>

4.  Plaintiff, Dr. Peter Garcia is a resident of Orange County Florida.

4. Defendant, The Delta Companies is a healthcare provider recruitment company located in multiple cities in the United States.  The office in question is located in Dallas, Texas.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(3) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5), (7) and within the meaning of Sections 11(b) and (h) of the ADEA, 29, U.S.C. §§ 630(b), (g) and (h).

6. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA.

7. At all relevant times, Defendant has continuously been doing business in the State of Texas and has continuously had at least 20 employees.

## ADMINISTRATIVE PROCEDURES

8. More than thirty days prior to the institution of this lawsuit, Dr. Garcia filed a

charge with the EEOC alleging violation of the ADEA by Defendant.

9. On August 3, 2020 the EEOC issued a Dismissal and Notice of Rights letter

without finding the Defendant was in violation or in compliance with the statutes for

which violations have been alleged.

10. All conditions precedent to the institution of this lawsuit has been fulfilled.


## STATEMENT OF CLAIMS

11. On or about August 6, 2019 Dr. Garcia received an email from Cassidy

Armstrong (Armstrong) for the position of Medical Director with Coastal Community

Health Centers (Coastal) in Brandon, Oregon a client of Delta. (Attachment A)

12. Coastal is a Federally Qualified Health Center (FQHC).

13. On August 15, 2019 Garcia answered the ad with an email expressing an

interest and stating the reasons he would be an excellent candidate for the job.

(Attachment A)

14. Dr. Garcia had previously been a successful Medical Director in a much larger

FQHC in Orlando, Florida.

15.  Dr. Garcia applied for the position by email sending a copy of his Curriculum

Vitae (CV) to Armstrong.

16. On August 16, 2019 Armstrong emailed Dr. Garcia to confirm an interview time

and Garcia's phone number which Delta had on record. (Attachment A)

17. The interview occurred by phone on August 19, 2019.

18. The interview explored Dr. Garcia's clinical and administrative background in a very superficial manner.  Essentially none of the questions explored the depth of Dr. Garcia's administrative or clinical background.

19.  Although the phone interview lasted over 30 minutes Armstrong provided very limited information regarding the practice he was representing.

20.  At no time during the interview did Armstrong mention that the Medical Director position was part of a FQHC.

21. Armstrong did not ask Garcia if he had previous experience as a Medical Director at a FQHC.

22.  Armstrong made no attempt to determine Garcia's knowledge regarding FQHC organizations.

23. Dr. Garcia found Armstrong's manner to somewhat abrupt and argumentative during the interview process which is very unusual among physician recruitment firms.

24. Dr. Garcia has not previously been part of a job interview where the interviewer failed to identify the specific type of practice and failed to ask a single question regarding the applicants experience with such an organization.

25. The failure of Armstrong to obtain an accurate work history was preplanned and a result of his prejudices regarding Dr. Garcia's age.

26. The failure to present Dr. Garcia in a truthful manner to Coastal was discriminatory in nature and also a result of Armstrong's prejudices regarding older candidates.

27. After the interview Armstrong prepared a report and forwarded this to Linda Maxon, CEO of Coastal Community Health Centers.

28. Armstrong's input regarding Dr. Garcia's qualifications was paramount in Costal's rejection of Garcia as a candidate.

29. Within hours of the interview Armstrong emailed Dr. Garcia stating the client was no longer interested in pursuing Dr. Garcia as he had no recent FQHC experience. (Attachment B) The term "recent experience" is vague and meaningless. Defendant has made no effort to define why "recent" experience is more valuable than previous successful experience.

30. The requirement of recent FQHC experience does not appear in any job description prepared by Delta or its client Coastal Community Health Centers. (Attachment B and E) "Recent Experience" is simply an expression of age disparagement.

31. The "Recent Experience" rational was created in retrospect as a pretext to exclude Dr. Garcia from further consideration and based on the discriminatory actions by Armstrong.

32. On August 27, 2019 Dr. Garcia sent an email Armstrong to express frustration with the interview process. (Attachment B)

33. In that same email he predicted that Armstrong would not present an accurate representation of his experience and abilities to the client Coastal.

34. Evidence in this case will demonstrate Delta made a series of false statements to Coastal, knowing they were false, in an effort to disparage Dr. Garcia and dissuade Coastal from pursuing Garcia for the Medical Director position.

35. Evidence in this case will also demonstrate that Coastal relied on the false information provided by Delta when it dismissed Garcia as a candidate for the Medical Director position. (Attachment D)

36. Evidence to be presented in this case also demonstrates that Delta made willful misrepresentations to the EEOC in an effort to encourage the EEOC to dismiss Garcia's charge of discrimination.  (Attachment C)

### FIRST CLAIM FOR RELIEF
(Age Discrimination in Employment Act 29 U.S.C. § 623)

For his first Claim for Relief, Dr. Peter Garcia alleges:

37. Sections 1-36 are incorporated by reference as if full set for herein.

36. In passing this law, Congress intended to promote the employment of the elderly "based on their ability rather than age."

37. The ADEA makes it unlawful, among other things, for an employer

i. to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

ii. to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age.

38.  The effect of the acts described above has been to deprive Dr. Garcia of an equal employment opportunity and otherwise to affect adversely his status as an applicant with Coastal.

39. Delta discriminated against Dr. Garcia because of his age in violation of 29

U.S.C. §§ 621 and 623 by failing to obtain an accurate and appropriate employment

history as it related to the Coastal position and misrepresenting Garcia's work history

to Coastal.

 40. The unlawful employment practices complained of above were willful within the

meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

41. As a further result of defendant's unlawful actions. Dr. Peter Garcia is entitled to

his reasonable attorney fees and costs pursuant to 29 U.S.C. §§ 626 and 216.


### SECOND CLAIM FOR RELIEF (Defamation)

For his Second Claim for Relief, Peter Garcia alleges as follows:

42. Sections 1-41 are incorporated by reference as if full set for herein.

41. The tort of defamation includes libel and slander.

42. Libel occurs when the defamatory statements are in writing. TEX. CIV. PRAC. &

REM.CODE § 73.001. Slander occurs when the statements are

spoken. *Milkovich,* 497 U.S. at 17, 110 S.Ct. 2695.

43. Libel "tends to injure a living person's reputation and thereby expose the person

to public hatred, contempt or ridicule, or financial injury or to impeach any person's

honesty, integrity, virtue, or reputation ... TEX. CIV. PRAC. & REM.CODE § 70.031.

44. Comments made by Armstrong after the interview with Garcia when speaking

with Maxon were made knowing they were false in an effort to damage Dr. Garcia's

reputation and discourage Coastal from considering Garcia for the Medical Director

position at Coastal.

45. The comments made by Armstrong injured Dr. Garcia's reputation exposing him to financial injury and impeaching his reputation.

46. The unlawful practices complained of above were willful within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b)

47. As a result of the unlawful actions of Delta Garcia is entitled to remedies as described in 29 U.S.C. §§ 626 and 216, Texas Civil Practice and Remedies Code, Title 2, Subsection C, Chapter 41 and the subsections set therein.

### THIRD CLAIM FOR RELIEF (Fraud)

For his Third Claim for Relief Peter Garcia alleges as follows:

48. Sections 1-47 are incorporated by reference as if full set within.

The elements of Fraud are:

(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Aquaplex, Inc. v. Rancho La Valencia, Inc.,* 297 S.W.3d 768, 774 (Tex.2009)

49. Defendant made representations to both Coastal and the EEOC regarding Garcia knowing that the statements were false.

50. Defendant made the false representations with the intent that Coastal and the EEOC would rely on those false statements.

51. Both Coastal and the EEOC acted on the false statements made by the Defendant.

52. Dr. Garcia was damaged by the false statements.

53. As a result of the unlawful actions of Delta, Dr. Garcia is entitled to remedies as described in Texas Civil Practice and Remedies Code, Title 2, Subsection C, Chapter 41 and the subsections set therein.


## PRAYER FOR RELIEF

WHEREFORE, plaintiff Peter Garcia, MD prays for judgment against defendants for the following relief:

1. For lost wages and benefits, including future losses, in an amount to be determined by the jury at the time of trial, along with prejudgment interest thereon;

2. For liquidated damages in the amount equal to his economic losses to be determined by the jury at the time of trial, along with prejudgment interest thereon;

3. For non-economic damages in an amount to be determined by the jury at the time of trial;

4. For punitive damages in an amount to be determined by the jury at the time of trial;

5. For reasonable attorney fees and costs incurred herein; and

6. For such other relief as the Court may deem just and proper.

Respectfully submitted this 15th day of October, 2020

By: _____
      Peter Garcia, MD (Pro Se)
      1969 S. Alafaya Trail
      Suite 231
      Orlando, Florida 32828

ATTACHMENT A

RIGHT TO SUE LETTER

**U.S. Equal Employment Opportunity Commission**

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: **Peter Garcia** | From: **Seattle Field Office** |
| ~~[redacted]~~ | **909 First Avenue** |
| **Orlando, FL 32828** | **Suite 400** |
| | **Seattle, WA 98104-1061** |

| | |
|---|---|
| ☐ | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **551-2020-01322** | **Alexandria Arbogast, Investigator** | **(206) 399-3483** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_____ for          August 03, 2020

Enclosures(s)

**Nancy A. Sienko, Director**          (Date Mailed)

cc:  **The Delta Companies**

**Wes Willard, VP of Legal & Risk**
**3100 Olympus Blvd. Ste. 500**
**Coppell, TX 75019**

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* to you (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

### PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit *before 7/1/10 – not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

### ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

### ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

ATTACHMENT B

EMAIL COMMUNICATION

Re: CMO - Family Medicine - Oregon
Yahoo/background

On Tuesday, August 6, 2019, 05:34:59 PM EDT, Cassidy Armstrong <carmstrong@deltaplacement.com> wrote:

**Dr. Garcia,**

*If the following piques your interest, and you are able to start working somewhere new within the next 12 months, please send your CV to carmstrong@deltaplacement.com and note the best time and phone number to reach you. No additional information will be provided via email. Thank you and I look forward to speaking with you.*

**The Practice:**
- 1.5 days/week clinic, the rest of your time on administrative duties.
- You will oversee 1 other physician, 2 Advanced Practitioners, and less than 5 nurses/MAs.
- The patient base is established and growing. No community outreach or marketing duties required. This is purely a clinical/operational role.
- Report directly to the CEO.
- Oversee medical staff scheduling (not patient scheduling,) and provide direction and consultation on all things medical except for pharmacy. Pharmacy is under CEO directly and through a 3rd party contract.
- Clinic Averages 2 patients/hour. They value quality time with each patient.
- $230k/year salary plus comprehensive benefits. Employer pays 100% of physician's health insurance premiums.
- Private retirement with a 3% match.
- Your 1.5 days of clinic will be walk-up/immediate/same-day care patients only. You will not be establishing/growing an ongoing patient panel. This is to ensure you have plenty of time to focus on administrative duties.

**Breathtakingly Beautiful Coastal Oregon location:**
- Regional Airport in Town
- Easy drive to Eugene.
- World renowned golf resorts.
- Affordable real estate despite being right on the ocean.
- Plenty to do for fun. There's a different art show, festival, etc., every weekend.
- Clean air, friendly people, zero traffic, and access to the major metros in the area via a direct flight or a straight highway drive.

**Candidate Parameters:**
- Must be currently board certified or able to re-certify within the year.
- No background issues within the last 10 years.
- Must be Family Medicine residency trained.
- Some administrative experience preferred.

Reference ID **#148540**

Send your CV today if you are interested in this position or if you are looking for other positions.
Cassidy Armstrong
(214) 442-4145
(800) 521-5060 x4145
carmstrong@deltaplacement.com
Delta Physician Placement

James Jones tcremail@yahoo.com
To:Cassidy Armstrong

**Thu, Aug 15, 2019 at 2:53 PM**

This position and my background may be a good match. I have considerable administrative experience.  The clinical practice is Urgent Care and I have significant work experience as well as board certification in Emergency Medicine. I have been previously licensed in Oregon and I am familiar with the Oregon Coast and Willamette Valley.

P. Garcia

On Thursday, **August 15, 2019, 04:01:20 PM** EDT, Cassidy Armstrong <carmstrong@deltaplacement.com> wrote:

Thank you, Dr. Garcia.
There's not a number on your CV.  This is what we have on file: (407) 721-7493 Please let me know if that's the best
number to reach you and at what time we will be sure to connect.  Thank you.


Respectfully,
Cassidy Armstrong
214-442-4145


**James Jones** <tcremail@yahoo.com>
**To:**Cassidy Armstrong

 **Thu, Aug 15, 2019 at 7:46 PM**

Starting with next Monday give me several times you are available and I can select the most convenient and give you a
call at that time.

P. Garcia




**Cassidy Armstrong** <carmstrong@deltaplacement.com>
**To:**James Jones

 **Fri, Aug 16, 2019 at 9:31 AM**

Monday – 10:30, 2:30, 4:30 CDT.

Thank you.

Please confirm that the number below still works.
Thank you.

Respectfully,

Cassidy Armstrong
214-442-4145




**James Jones** <tcremail@yahoo.com>
**To:**Cassidy Armstrong

 **Fri, Aug 16, 2019 at 1:18 PM**

I can give you a call on Monday 2:30 CDT / 3:30 EDT at your number below.

P. Garcia

On Monday, **August 19, 2019, 05:57:24 PM EDT**, Cassidy Armstrong <carmstrong@deltaplacement.com> wrote:

Dr. Garcia,

My client in Oregon is not interested in pursuing you for the position at this time.  She cited no FQHC experience in recent years.  I wish you the best in your future endeavors.

Respectfully,

**Cassidy Armstrong | *Principal Consultant***
(800) 521-5060 x4145 | (214) 442-4145 (direct)
(267) 295-8739 (fax) | (469) 878-4809 (mobile)


Re: Oregon job
**James Jones** <tcremail@yahoo.com>
**To:**Cassidy Armstrong

Cc:info@coastcommunityhealth.org

**Tue, Aug 27, 2019 at 10:32 PM**

I could not help but reply to this email as the proffered rational for discontinuing my "candidacy" for the Medical Director position was a lack of experience at an FQHC.  This is of course false.  My first job in Orlando was the Medical Director for an FQHC.  The FQHC, Community Health Centers, Inc., at that time had 6 clinics and about 25 providers and a 10 to 12 million budget.  I have extensive experience with FQHC's and a complete understanding of how they operate.  I have been involved in grant writing and submitting the annual report to the Federal Government each year to document the need for funding.  In addition if you look at one of the HMO listings, Alpha Heath Plan, this was an attempt by the FQHCs in Florida to start their own insurance company to compete with other HMO's.  The effort eventually failed. I interfaced on a regular basis with Medical Directors and CEO's of other FQHCs in Florida.

It seems very odd that your ad did not mention this was an FQHC.  Equally inexplicable is that you never mentioned this during the interview and never asked if I had any experience at an FQHC.  Difficult to understand why that would not be one of the threshold questions.  I enjoy highlighting my accomplishments in an FQHC environment. Given your critique of my incomplete CV you certainly understood there were other experiences that were not listed.

I viewed the web page of this organization and found it fascinating.  Under out staff there are pictures of seven administrative people and the pharmacist. No physicians, no physician assistants and no nurse practitioners.  Either there are none working there or they don't seem to be valued as much as others.  If the CEO has been there for six years how many Medical Directors have there been?  Why have folks moved on?  I have a much better understanding why your initial email describing the position is absent any real information about the organization. Your statements as a whole were inaccurate and misleading.

In conclusion it would appear that you did not accurately represent my background to your client.  Negligent or intentional, hard to tell at this point.  I hope you and Linda hire a very qualified individual or unfortunately it will raise further questions that will need to be posed.

ATTACHMENT C

POSITION STATEMENT DELTA

Representing Management Exclusively in Workplace Law and Related Litigation

# jackson|lewis

Attorneys at Law

Michael J. DePonte, Esq.
Board Certified-Texas Board of Legal
Specialization
Labor and Employment Law
Civil Trial Law

Direct Dial: 972.728.3307
Email: depontem@jacksonlewis.com

Jackson Lewis P.C.
Ross Tower
500 N. Akard
Suite 2500
Dallas, Texas 75201
Tel 214 520-2400
Fax 214 520-2008
www.jacksonlewis.com

| | | | |
|---|---|---|---|
| ALBANY, NY | GREENVILLE, SC | MINNEAPOLIS, MN | PROVIDENCE, RI |
| ALBUQUERQUE, NM | HARTFORD, CT | MONMOUTH COUNTY, NJ | RALEIGH-DURHAM, NC |
| ATLANTA, GA | HONOLULU, HI * | MORRISTOWN, NJ | RAPID CITY, SD |
| AUSTIN, TX | HOUSTON, TX | NEW ORLEANS, LA | RICHMOND, VA |
| BALTIMORE, MD | INDIANAPOLIS, IN | NEW YORK, NY | SACRAMENTO, CA |
| BIRMINGHAM, AL | JACKSONVILLE, FL | NORFOLK, VA | SAINT LOUIS, MO |
| BOSTON, MA | KANSAS CITY, KS | OMAHA, NE | SALT LAKE CITY, UT |
| CHICAGO, IL | LAS VEGAS, NV | ORANGE COUNTY, CA | SAN DIEGO, CA |
| CINCINNATI, OH | LONG ISLAND, NY | ORLANDO, FL | SAN FRANCISCO, CA |
| CLEVELAND, OH | LOS ANGELES, CA | PHILADELPHIA, PA | SAN JUAN, PUERTO RICO |
| DALLAS, TX | MADISON, WI | PHOENIX, AZ | SEATTLE, WA |
| DAYTON, OH | MEMPHIS, TN | PITTSBURGH, PA | TAMPA, FL |
| DENVER, CO | MIAMI, FL | PORTLAND, OR | WASHINGTON DC REGION |
| DETROIT, MI | MILWAUKEE, WI\ | PORTSMOUTH, NH | WHITE PLAINS, NY |
| GRAND RAPIDS, MI | | | |

March 12, 2020

**_Via the EEOC Portal:_**
Cheryl Milner
EEOC Seattle Field Office
909 First Avenue, Suite 400
Seattle, Washington 98104-1061

> Re:   Charging Party:  Peter Garcia
>        Respondent:  The Delta Companies
>        <u>EEOC Charge No. 551-2020-01322</u>

Dear Ms. Milner:

This Firm and the undersigned represent Respondent, Delta Physician Placement, LLC[1] (referred to herein as "Delta" or the "Company") with regard to the above-referenced Charge filed by Peter Garcia ("Garcia" or "Charging Party"). This letter serves as the formal position statement of Delta in response to the Charge.[2] Charging Party asserts Delta discriminated against him on the basis of his age. Delta denies Charging Party's allegations and, for the reasons set forth below, requests the Charge be dismissed.

## A.   Parties

Delta is a medical personnel placement company that works with the national healthcare industry to place fulltime and temporary physicians into hospitals and clinical care facilities. Delta also helps place therapists, nurses, speech language pathologists, and various technicians into health care positions.

Charging Party is a doctor who applied for a position through Delta. The position at issue was with one of Delta's clients, Coast Community Health Center (CCHC).

---

[1]   Respondent is incorrectly named in the Charge as "The Delta Companies".

[2]   The Company's position is based upon the allegations in the Charge and the information available to the Company at this time. The Company reserves the right to present new or additional facts based upon subsequently-acquired information.



**B.      The Company's Policies**

Delta is committed to providing equal employment opportunities to all employees and to applicants with whom it engages. The Company does not tolerate discrimination or harassment on any protected basis. The Company has policies and procedures explaining the Company's commitment to a discrimination-free and retaliation-free environment.

**C.      Charging Party's Involvement with Delta**

Delta had very limited involvement with Charging Party. Indeed, Delta never employed Charging Party nor did it have any potential employment relationship with him. Delta is merely a medical personnel placement company that works to place medical professionals in positions with its hiring clients.

In 2019, Charging Party spoke with some of Delta's recruiters about potential job openings and placements. Delta acted as a middleman to notify Charging Party of potential positions, forwarded his CV, and then let Charging Party know if a hiring client was interested in further discussions. In August of 2019, one of Delta's recruiters spoke with Charging Party about a potential position with CCHC in Oregon. Delta sent CCHC Charging Party's CV for consideration. However, CCHC stated it was not interested in pursuing Charging Party's employment because he lacked recent Federally Qualified Health Center (FQHC) experience.[3] No further action was taken by Delta regarding CCHC's consideration of Charging Party for potential employment.

**D.      Delta did not Discriminate against Charging Party on the Basis of His Age**

Delta did not discriminate against Charging Party on the basis of his age.[4] As an initial matter, Charging Party fails to assert any allegation that Delta engaged in any discriminatory action. Rather, Charging Party asserts he merely applied for work with CCHC through Delta and that CCHC informed him that CCHC did not believe he had the requisite recent FQHC experience. Because Charging Party fails to assert *any* basis for a claim of discrimination against Delta, the Charge should be dismissed.

Even if Charging Party had asserted Delta somehow discriminated against him on the basis of his age, his claim would still fail. To establish such a claim, Charging Party must show: (1) he was in the age group the ADEA protects; (2) he was qualified for the job for which he applied; (3) he was rejected for the job despite his qualifications; and (4) he was rejected under circumstances giving rise to an inference of unlawful discrimination. A party alleging discrimination under the ADEA has the burden of proving that age was the "but-for" cause of the failure to hire.

As an initial matter, Charging Party cannot establish he was qualified for the position at CCHC. Specifically, CCHC was seeking an individual with recent FQHC experience. While

---

[3]    Notably, Delta continued to work with Charging Party to place him at other clients. It belies all logic that Delta would have somehow discriminated against Charging Party only to continue to try to place him at other facilities.
[4]    Charging Party's identifies his birth year as 1955.



Charging Party asserts he was "well qualified for the position" he fails to allege any facts to support he had recent FQHC experience. Indeed, Charging Party does not refute that CCHC desired to retain someone with recent FQHC experience.

Likewise, Charging Party cannot establish *Delta* rejected him for any position. It is axiomatic that to maintain a claim of discrimination, the respondent must have been the party that discriminated against the applicant and made the adverse employment decision. Here, Delta did not make any employment decision regarding Charging Party. Charging Party was not applying for a position with Delta—Delta was merely the go-between that connected Charging Party to prospective employers. Thus, Delta did not make any employment decisions, or take any employment actions, with respect to Charging Party.

Finally, Charging Party fails to assert any facts giving rise to an inference of age discrimination. In fact, Charging Party's own allegations – that CCHC believed he lacked the requisite recent experience sought for the position – belies his own claim. Indeed, where allegations fail to demonstrate or, as in this matter, fail to provide a basis for any discriminatory intent, the claim must fail.[5]

## E. **Conclusion**

Delta has no idea why Charging Party thinks the *Delta* discriminated against him on any basis. The Company never employed Charging Party, never had any employment relationship with him, and never made any decision regarding his potential employment with CCHC or any other entity. Delta merely served as an intermediary to try to connect Charging Party with hiring clients. As a result, Charging Party's claims must be dismissed.

We trust you now have all the information necessary to issue a no cause determination. If, however, you need additional information, please do not hesitate to contact me.

Sincerely,

JACKSON LEWIS P.C.

Michael J. DePonte

MJD/CLC/ls

---

[5]   *See e.g., Haskett v. Cinco Energy Management Group, 161 F.Supp.3d 465* (S.D. Tex. 2015) (quoting *16630 Southfield Ltd. P'ship. v. Flagstar Bank, F.S.B., 727 F.3d 502, 504* (6th Cir. 2013) ("The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." "[T]he existence of obvious alternative explanations simply illustrates the unreasonableness of the inference sought and the implausibility of the claims made.")).

ATTACHMENT D

POSITION STATEMENT COASTAL



# HEALTH
## c e n t e r

1010 First Street SE, Suite 110, Bandon, Oregon 97411     Phone 541-347-2529     Fax 541-347-9196

May 27, 2020

Ms. Annalie Greer
Enforcement Supervisor
Seattle Field Office
Equal Employer Opportunity Commission
909 1st Ave, Suite 400
Seattle, WA 98104

Re:     Charging Party: Mr. Peter Garcia
        Respondent: Coast Community Health Center
        Charge No. 551.2020.00333

Dear Ms. Greer,

Thank you again for providing our agency with the extension our response due to the COVID 19 epidemic. We greatly appreciate this consideration as we are a very small health center, and we have had all our staff working to respond to the medical and emotional needs of the communities we serve. Per your request, please find below our response to the REQUEST FOR INFORMATION, as outlined in the form provided to us in our portal.

<u>Background and Position Statement (Addresses Item #4 below)</u>

Bandon Community Health Center, dba. Coast Community Health Center ("Coast") opened as a small not-for-profit rural health center in 2010 and shifted our status to a community health center in 2013. We operate two small facilities along the Oregon coast providing primary and preventative healthcare services to the most vulnerable, and those experiencing barriers to access to care, the elderly, and families in the region. We operate through grants, and revenue generated through the services we provide. Our health center now employs 38 people. Our workforce is comprised of a mixture of experienced professionals, often those who are moving towards the end of their careers who have chosen to work at CCHC because they can practice medicine in a holistic manner in which they were trained, and recent graduates who chose to practice in a rural setting with the opportunity to serve patients side-by-side with experienced practitioners. Our Medical Director/Chief Medical Officer position was previously held by a female pediatrician who was 58 years old. This person vacated her position in July of 2019 to assume a position in Portland, Oregon. Our organization elected for the first time to retain Delta Companies, a National Recruitment Firm, to recruit for this position ("Delta"). Delta served as Coast's main point of contact for posting the position, recruitment and outreach to candidates, screening of candidates, conducting initial interviews of interested candidates, and presenting interested candidates to our organization for consideration.

Mr. Garcia submitted his resume and application to Delta concerning our position sometime in mid-August 2019. Delta independently screened Mr. Garcia and made multiple attempts to reach out to Mr.

1

Item #7-Packet #1, email dated August 19th, 2019 from Mr. Cassidy Armstrong). Upon finally reaching Mr. Garcia, the recruiter interviewed him. The recruiter then followed up to provide me with a summary of the candidate (see Item#7-Packet #1). I reviewed the summary of Mr. Garcia's profile, discussed the interview with the recruiter, and upon conferring about the job requirements in the job description, determined that Mr. Garcia's experience and background did not meet what Coast needed for this position.

Delta also agreed with our determination, and we continued with our recruitment search. Delta continues to serve as the lead point of contact for any interested candidates. The recruiter was responsible for responding to Mr. Garcia regarding this position. The recruiter proceeded to screen additional candidates for the position.

In November 2019, Mr. Garcia submitted a second application to Coast directly concerning the same position. Upon receiving this application, we contacted Delta to advise the recruiter that Mr. Garcia had gone past the recruitment firm and applied a second time directly to our organization. Because we were at the time under contract with the recruitment firm, any inquiry by a candidate who was presented by the firm previously must be directed back to the firm. My Human Resources Manager attempted to reach out to Mr. Garcia, but had difficulty reaching Mr. Garcia as he had no phone number on his resume. She emailed him asking that he contact her, but he did not respond. She never spoke with him directly. We left further communication in the hands of our recruiter.

When Mr. Garcia reached out in November, we were already moving forward with another candidate presented by Delta, and at the stage of setting up an in-person interview with this candidate. We had no further communication with Mr. Garcia until we received the notice of a complaint filed with your agency. This is not the first candidate who has applied to Coast a second time to avert the recruitment firm. We handled this situation in the same manner, and per our prescribed contract with Delta to avoid and confusion or mistrust between the recruitment firm and Coast.

REDACTED

REDACTED

REDACTED


REDACTED


9.    <u>Successful Candidate Details:</u> Our recruitment for Medical Director/Chief Medical Officer is continuing. We have had four candidates who have interviewed by phone for initial introductory interviews, two candidates who were invited for a second formal phone interview with our medical team, and both candidates subsequently visited our health center in-person for interviews for a two-day period of time. We are in the process of pursuing employment possibilities with one of these two candidates presently. I would be pleased to provide you with the chronology of hiring/interview process we have followed for both candidates should you wish to review this process. Both candidates had formal phone and in-person interviews during the past four-months.

REDACTED                          Statement from Linda Maxon, Chief Executive Officer. Our health center has yet to hire a candidate for this position. We are currently in discussion with a candidate who has moved through our recruitment process to complete the introductory phone call, formal phone interview with the medical team, on-site interview and post-interview call. We are in the process of providing this candidate with Organizational information concerning Coast CHC's compensation and benefits package and will be considering a formal offer of employment within the next 5-7 days.

Specific to Mr. Garcia, this role is the lead medical provider role over the entire medical and behavioral health team, working with our Medicaid contracts and dealing with high acuity, low functioning patients who present with co-morbidities and chronic conditions, who have low literacy, and live in an isolated rural communities. Mr. Garcia's resume did not adequately demonstrate his experience in working with the vulnerable low-income populations that we serve as a community health center, specifically working,

3

and supervising medical staff who are experiencing issues, the use of telemedicine, behavioral health services, addiction, and medication assisted therapy for patients who often present with psycho/social medical needs related to their addiction challenges, and are non-compliant in their interactions with medical staff.  Mr. Garcia's resume as initially presented to DELTA Recruitment firm, and in discussion with the recruiter presented experience in a boutique clinic environment, and in consulting. Our health center requires a medical director/chief medical officer who is hands on in treating the complexities of the above noted challenging, high acuity- patient population.

REDACTED

CLOSING STATEMENT:

I have been the Executive Director/CEO of Coast since its opening in 2010.  We deny the allegations of age discrimination.  We pride ourselves on the number of seasoned medical professionals who choose to work at Coast, volunteer, and serve on our Board of Directors and Board delegated committees.

We believe the quality of experience and tenure only adds to our comprehensive care provided at our health center.  We screen applicants based on their skills, knowledge, ability and experience in working in medicine, understanding of the Oregon expanded Medicaid system. We also value knowledge and experience in working in a rural, isolated, and poverty- stricken community. I regret that Mr. Garcia feels he is being discriminated against with respect to his age. This is in no way our intention, nor our value within our organization.

Respectfully Submitted,

*Linda S. Maxon*

Linda S. Maxon
Chief Executive Officer
Coast Community Health Center

Attachments:
1. Employee Handbook
2. Response to Item #7 – Packet 1, 2, 3, 4

4

ATTACHMENT E

JOB DESCRIPTIONS

COASTAL AND DELTA

## JOB DESCRIPTIONS AND REQUIMENTS

The ad which Garcia received from Delta included the following four points describing the desired background for the Medical Director position at Costal.   There is no mention of any recent FQHC experience and no metion of any experience at an FQHC

- Must be currently Board Certified or able to re-certify within a year. (Board Certification was not required to be hired)
- No background issues wining the last 10 years.  (Individuals who had committed acts worthy of state of federal sanction more than 10 years ago could be hired)
- Must be Family Medicine residency trained.
- Some administrative experience preferred. (There was no requirement of any administrative experience let alone Federally Qualified Health Center (FQHC) experience.

Oregon Coastal's Web Site is currently listing the Chief Medical Officer Position and its job requirements:   *K April, 2020*

**Chief Medical Officer** –
Position provides supervision to professional clinical and allied health staff, contracted medical professional services and, manages contractual agreements for laboratory, pharmacy, and dental services, substance abuse counseling, and other specialty services. Engages in completing ongoing and annual performance evaluations and recommending merit increases, promotions, and disciplinary actions of clinical staff and the clinical site manager.

- As a key member of the Senior Leadership Team, the Chief Medical Officer (CMO) will report to the CEO.
- Participates in strategic planning, budgeting, and organizational development with the Management team.
- Directs and oversees all aspects of the clinical functions of the organization including the development and implementation of policies and procedures pertaining to clinical staff and services; ensures clinical policies, procedures, and protocols are current and in compliance with all State and Federal regulations.
- Responsible for recommending strategies to enhance clinical effectiveness and ensuring quality care is afforded to all patients who have received services at the main clinic, or outreach sites and events.
- Responsible for providing leadership and oversight to the Center's health services programs; supervision of clinical staff and provision of direct patient care.
- Chair of the Quality Improvement Committee; responsible for performance improvement programs and identifying individual performance improvement and continuing professional educations to support provider development and clinical skill base.
- Collaborates with the CEO in recruiting qualified licensed independent providers; actively participates selection, hiring of professional staff, and annual credentialing review of all providers.
- Directs and responds to compliance issues, investigations, complaints, and other related internal/external events
- Is an advocate for the underserved with sensitivity to each client's unique needs; ensures clinical staff are providing the highest level of care for patients, ensure there is a zero tolerance

to discrimination against patients, or prospective patients and upholds the mission of the clinic to serve patients regardless of the ability to pay

- Direct oversight of all HRSA, CCO, Meaningful Use, Patient Centered Medical Home, Medicare quality reporting measures; recommends clinical objectives with reference to implementation of health plans, represents clinical management in administrative matters, advises on technology and equipment needs.
- Services as advocate for the health center and liaison to local and state medical professionals as appropriate.


Knowledge of health care administration systems, governmental regulations and compliance requirements. Excellent leadership skills and strength in exercising initiative, judgment, problem-solving, decision-making to resolve problems effectively. Demonstrated skills in developing and maintaining effective relationships with medical and administrative staff, patients, and the public. Skill in developing and maintaining Center quality improvement programs. Ability to anticipate and react calmly in emergency situations. Skill in planning, organizing, prioritizing, delegating and supervising. Ability to analyze and interpret complex data. Excellent and effective written and verbal communication. Knowledge of fiscal management and human resource management techniques. Knowledge of computer systems and applications.

A summary of Garcia's Qualifications for comparison to Delta's job parameters and Coastal job requirements. Any comparison will demonstrate that Garcia was well qualified for this position as he clearly stated in his email to to Cassidy Armstrong on August 15, 2109.

### <u>Summary of Professional Experience</u>

- <u>Clinical</u> – Thirty years Experience in Emergency Medicine and Family Practice
- <u>Administration</u> – Ten Plus Years of progressive experience with physician supervision, employee evaluations, budget preparations, clinical services evaluation, operational issues
- <u>Administrative Positions</u>
    - Medical Director Emergency Department
    - Director Student Health Center
    - Physician Advisor Business and Legal Affairs/Assistant Medical Director Large Multispecialty Medical Group
    - Medical Director FQHC
    - Medical Director County Medical Clinic
- <u>Quality Improvement-</u> Fellowship in Quality and Risk Management in an integrated delivery system. Leading clinical quality programs and/or working in conjunction with others to develop quality standards in multiple organizations. Juran facilitator training ,
- <u>Utilization Management / Review</u> – Insurance / HMO  review of inpatient admissions, outpatient procedures. Imaging
- <u>Analysis of Data</u> – Analysis of clinical and financial data.   QA studies with clinical, operational and financial data measuring the quality of care, cost of care and patient satisfaction.
- <u>Financial Management –</u> Responsible for financial management of a Student Health Organization and Budget preparation with several organizations.
- <u>Teaching Experience-</u> See Below (In addition Volunteer Faculty at University of California, Irvine and University of Wisconsin.
- <u>Survey Accreditation</u>— Assisted several organizations pass JACHO and NCQA surveys
- <u>Medical Staff-</u>  Department Head and  Medical Staff Officer

- <u>Committee experience:</u>  Board of Directors, QI, QA, UM, Pharmacy and Therapeutics, Patient Executive Committee Member

### Education and Training

| Degree/Experience | Institution |
|---|---|
| Undergraduate | University of Utah<br>Salt Lake City, UT |
| Doctor of Medicine | University of Washington<br>Seattle, Washington |
| Family Practice Residency | San Bernardino County Med Center<br>San Bernardino, California |
| Juris Doctor | Western State University College of Law<br>Fullerton, California |
| Master of Science<br>Health Care Management | University of Wisconsin—Milwaukee<br>Milwaukee, Wisconsin |

### Board Certification and Licenses

1. American Board of Family Practice – Last exam completed -- 2014

2. American Board of Emergency Medicine – Last exam completed --2010  (next exam 2020)

Find jobs    Company reviews    Find salaries    Upload your resume    **Sign in**    | Employers / Post Job

# Chief Medical Officer

Coast Community Health Center - Bandon, OR 97411

## Coast Community Health Center

⭐ 4 reviews
Read what people are saying about working here.

>

┌─────────────────────────────────┐
│         Apply Now               │
└─────────────────────────────────┘

♡ **Save this job**

▢ **Copy link**

**Duties and Responsibilities:**

- As a key member of the CCHC Leadership Team, the Chief Medical Officer (CMO) will report to the CEO.
- Participates in strategic planning, budgeting, and organizational development with the Management team.
- Directs and oversees all aspects of the clinical functions of the organization including the development and implementation of policies and procedures [CM1]pertaining to clinical staff and services; ensures clinical policies, procedures, and protocols are current and in compliance with all State and Federal regulations.[CM2]
- Responsible for recommending strategies to enhance clinical effectiveness and ensuring quality care is afforded to all patients who have received services at the main clinic, or outreach sites and events.
- Responsible for providing leadership and oversight to the Center's health services programs; supervision of professional clinical staff including behavioral health providers and provision of direct patient care as needed.
- Oversight Chair of the Quality Improvement Committee; responsible for performance improvement programs and identifying individual performance improvement and continuing professional educations to support provider development and clinical skill base.
- Collaborates with the CEO in recruiting qualified licensed independent providers; actively participates selection, hiring of professional staff, and annual credentialing review of all providers.
- Directs and responds to compliance issues, investigations, complaints, and other related internal/external events as directed by COO
- Is an advocate for underserved with sensitivity to each client's unique needs; ensures clinical staff are providing the highest level of care for patients, ensure there is a zero tolerance to discrimination against patients, or prospective patients and upholds the mission of the clinic to serve patients regardless of the ability to pay
- Services as advocate for the health center and liaison to local and state medical professionals as appropriate.

**Supervisory Relationships**: Position provides supervision to professional clinical and allied health staff, contracted medical professional services and, manages contractual agreements for laboratory, pharmacy, and dental services, substance abuse counseling, and other specialty services. Engages in completing ongoing and annual performance evaluations and recommending merit increases, promotions, and disciplinary actions of professional clinical staff and the clinical site manager.

**Travel Requirements**: Position requires infrequent travel within local community, state and outside to attend required continuing education, clinical related conferences, association, state and federal meetings

**Qualifications:** Current Oregon M.D. or D.O. or DNP medical licensure, Board Certification or Board Eligibility in Family Practice or Internal Medicine or other licensure Primary Care. Five years of clinical experience in a medical office setting,

including two years in clinical management with experience working with underinsured/uninsured patients. Clear record with the Board of Medical Examiners and/or Board of Nursing. Proof of insurability required.

**Position Requirements:** Knowledge of health care administration systems, quality improvement and team-based care, governmental regulations and compliance requirements. Excellent leadership skills and strength in exercising initiative, judgment, problem-solving, decision-making to resolve problems effectively. Demonstrated skills in developing and maintaining effective relationships with medical and administrative staff, patients, and the public. Skill in developing and maintaining Center quality improvement programs. Ability to anticipate and react calmly in emergency situations. Skill in planning, organizing, prioritizing, delegating and supervising. Ability to analyze and interpret complex data. Excellent and effective written and verbal communication. Knowledge of fiscal management and human resource management techniques. Knowledge of computer systems and applications.

Coast Community Health Center - 25 days ago - report job

- original job

If you require alternative methods of application or screening, you must approach the employer directly to request this as Indeed is not responsible for the employer's application process.

Chief Medical Officer jobs in Bandon, OR

Jobs at Coast Community Health Center in Bandon, OR

Chief Medical Officer salaries in Bandon, OR

© 2020 Indeed - Do Not Sell My Personal Information - Privacy Center - Cookies, Privacy and Terms

JS 44 (Rev. 10/20) - TXND (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Peter Garcia, MD

**DEFENDANTS**

The Delta Companies

**(b)** County of Residence of First Listed Plaintiff   Orange (FL)
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Dallas
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Pro Se

RECEIVED
OCT 20 2020
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* | |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                              *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | **PERSONAL INJURY** | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 365 Personal Injury - Product Liability | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | ☐ 890 Other Statutory Actions |
| | | | ☐ 740 Railway Labor Act | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 751 Family and Medical Leave Act | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 791 Employee Retirement Income Security Act | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | |
| | | ☐ 550 Civil Rights | **FEDERAL TAX SUITS** | |
| | | ☐ 555 Prison Condition | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 871 IRS—Third Party 26 USC 7609 | |

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Age Discrimination in Employment Act 29 USC § 621 et seq

Brief description of cause:
Defendant discriminated against Plaintiff based on age in violation of ADEA

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
10/15/2020

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II. Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III. Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV. Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V. Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI. Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII. Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII. Related Cases.** This section of the JS 44 is used to reference related cases, if any. If a related case exists, whether pending or closed, insert the docket numbers and the corresponding judge names for such cases. A case is related to this filing if the case: 1) involves some or all of the same parties and is based on the same or similar claim; 2) involves the same property, transaction, or event; 3) involves substantially similar issues of law and fact; and/or 4) involves the same estate in a bankruptcy appeal.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments.

PRIORITY MAIL
FLAT RATE
POSTAGE REQUIRED

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

Peter Ngwa
2636 W. New York Dr
Orlando, FL 32826

FROM

TO:

RECEIVED-2

OCT 20 2020

MAILROOM

United States District Court
Clerk of the Court
Room 1452
1100 Commerce Street
Dallas, TX   75242

To schedule free
Package Pickup,
scan the QR code.

USPS.COM/PICKUP

**UNITED STATES**
**POSTAL SERVICE.**

Retail

US POSTAGE PAID
Origin: 32828
10/16/20
1169440276-17

**$7.75**

**P** PRIORITY MAIL 2-DAY®

0 Lb 9.90 Oz

1006

EXPECTED DELIVERY DAY:  10/19/20

C001

SHIP
TO:
1100 COMMERCE ST
STE 1452
Dallas TX  75242-1310

USPS TRACKING® NUMBER

9505 5132 4937 0290 7869 83

**UNITED STATES**
**POSTAL SERVICE.**

This envelope is made from post-consumer waste. Please recycle - again.

# Domestic only.   ** For Domestic shipments, the maximum weight is 70 lbs. For International shipments, the maximum weight is 4 lbs.