IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PETER GARCIA, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-CV-03194-X-BH |
| | § | |
| THE DELTA COMPANIES, | § | |
| Defendant. | § | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings, evidence, and applicable law, *Plaintiff's Motion for Summary Judgment*, filed April 15, 2022 (doc. 73), should be **DENIED**, and *Defendant's Motion for Summary Judgment*, filed May 13, 2022 (doc. 79), should be **GRANTED**. *Plaintiff's [sic] Reply to Defendant's Summary Judgement Motion*, filed June 19, 2022 (doc. 92), is liberally construed in part as a motion for leave to amend the complaint, and it is **GRANTED**.

## I.   BACKGROUND

In this *pro se* age discrimination lawsuit, Peter Garcia (Plaintiff) alleges that an employee of a medical recruitment firm, The Delta Companies (Defendant), made false statements about him to its client, which then "reject[ed]" him for employment. (*See* doc. 3 at 1, 5.)[2]

Plaintiff is a medical doctor residing in Orlando, Florida. (*See* doc. 81 at 5; doc. 92-2 at 14.) Since graduating from medical school in 1980, he has worked as both a clinical and an

---

[1] By *Special Order 3-251*, this *pro se* case has been referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

administrative physician. (doc. 92-2 at 15.) Early in his career, before 2003, he was the medical director for a Federally Qualified Health Center (FQHC) for three years. (*Id.*) Given his extensive work history, Plaintiff "routinely" will not include all his past positions on his curriculum vitae (CV). (*Id.*) Before sending his CV to a potential employer, he typically customizes it by "emphasiz[ing] the most salient features of [his] background as it relates to the new position." (*Id.*) He does not include a phone number on his CV because he is deaf, and his closed captioning system does not accept incoming telephone calls. (*Id.*)

Defendant provides medical recruitment services within the national healthcare industry. (doc. 81 at 34.) As part of its recruiting process, it solicits physicians across the country on behalf of its hiring clients for job openings and forwards candidate CVs to the hiring clients, which then determine whether to proceed with interviews and potential employment. (*Id.*) From as early as August 2018, Defendant has reached out to Plaintiff on behalf of its hiring clients about various job openings. (*Id.*)

Coast Community Health Center (Client) is a small health center in rural Oregon that retained Defendant to recruit and screen candidates for a Chief Medical Officer position (Position). (*See* docs. 75 at 19; 81 at 34.) On August 6, 2019, a recruiter employed by Defendant (Recruiter) emailed Plaintiff about his interest in the Position. (docs. 75 at 56; 81 at 34, 39, 44-45; 92-2 at 15.) The email did not expressly identify Client but included an overview about the medical practice, location, position, and candidate parameters. (docs. 75 at 56; 81 at 39.) It specified that residency training in Family Medicine and current board certification (or recertification within a year) were required, and that "[s]ome" administrative experience was "preferred." (*Id.*) The email instructed Plaintiff to email Recruiter his CV and to "note the best time and phone number to reach you" if

2

he was interested in the Position. (*Id.*)

On August 15, 2019, Plaintiff replied via email that his background may be a "good match" for the position; he attached his CV but did not provide a telephone number or the best time to call. (docs. 75 at 56; 81 at 6, 40, 45.) Because he did not have information regarding the specifics of the practice, he was unable to customize the CV. (doc. 92-2 at 15.)  Recruiter replied about an hour later, noting that Plaintiff's CV did not include a telephone number, and he asked to verify the telephone number that Defendant had on file and about Plaintiff's availability for a call. (docs. 75 at 57; 81 at 6, 34, 40.) Later that evening Plaintiff replied: "Starting with next Monday[,] give me several times you are available and I can select the most convenient and give you a call at that time." (docs. 75 at 57; 81 at 41.) The following morning, Recruiter responded with his availability and again asked Plaintiff to confirm that the telephone number on file still worked. (*Id.*) Plaintiff's email response stated in its entirety: "I can give you a call on Monday 2:30 CDT/3:30 EDT at your number below." (doc. 75 at 57.)

On August 19, 2019, Plaintiff called Recruiter at the scheduled time. (*See* docs. 81 at 45; 92-2 at 15.) Recruiter asked Plaintiff about his willingness to move from Florida to Oregon and his ability to fulfill the requirement of an active Oregon license. (docs. 81 at 45; 92-2 at 16.) Plaintiff responded that he had lived in Oregon in the late 1960's and early 1970's, and that he previously had an Oregon license, so "moving to Oregon for the position was not problematic." (doc. 92-2 at 16.) When discussing his CV, Recruiter noted an unexplained multi-year gap before 2003, and criticized Plaintiff for omitting twenty years of work experience. (docs. 75 at 58; 81 at 45, 51; 92-2 at 16.) Plaintiff offered to discuss his employers and work experience prior to 2003, but Recruiter "would not engage in a discussion regarding these work experiences." (doc. 92-2 at

3

16.) Recruiter told Plaintiff that he would be submitting the CV to Client. (doc. 81 at 45.)

After the call, Recruiter sent Plaintiff's CV to Client's Chief Executive Officer (CEO) for consideration. (doc. 81 at 45.) CEO informed Recruiter that she did not want to proceed with Plaintiff's employment due to his lack of recent FQHC experience. (*Id.* at 45-46.) The same day, Recruiter emailed Plaintiff the following:

> My client in Oregon is not interested in pursuing you for the position at this time. She cited no FQHC experience in recent years. I wish you the best in your future endeavors. (*See* docs. 75 at 58; 92-2 at 16.)

(docs. 75 at 58; 81 at 42.) "[I]ncensed" by the "poor treatment" he experienced in his call with Recruiter, Plaintiff immediately unsubscribed from all emails from Defendant. (doc. 92-2 at 17.)

On August 26, 2019, another one of Defendant's recruiters emailed Plaintiff regarding a different position for medical director. (doc. 81 at 34, 43.) The following day, Plaintiff sent Recruiter and Client an email disputing his lack of FQHC experience as the proffered rationale for discontinuing his candidacy for the Position. (docs. 75 at 58; 81 at 51.) After describing his past work as the medical director for an FQHC, he chastised Recruiter for not providing accurate information about the Position:

> It seems very odd that your ad did not mention this was an FQHC. Equally inexplicable is that you never mentioned this during the interview and never asked if I had any experience at an FQHC. Difficult to understand why that would not be one of the threshold questions. I enjoy highlighting my accomplishments in an FQHC environment. Given your critique of my incomplete CV you certainly understood there were other experiences that were not listed.

(*Id.*) His email then proceeded to directly criticize Client along with its hiring practices:

> I viewed the web page of this organization and found it fascinating. Under ou[r] staff there are pictures of seven administrative people and the pharmacist. No physicians, no physician assistants and no nurse practitioners. Either there are none working there or they don't seem to be valued as much as others. If the CEO has

4

been there for six years how many Medical Directors have there been? Why have folks moved on? I have a much better understanding why your initial email describing the position is absent any real information about the organization. Your statements as a whole were inaccurate and misleading.

(*Id.*)

Three months after his call with Recruiter, Plaintiff accessed Client's website and saw that the Position was still open. (doc. 92-2 at 17.) On November 27, 2019, he reapplied directly to Client by sending CEO his revised CV and his performance evaluations from his time as the medical director at an FQHC from 1997 to 1999. (docs. 75 at 28-42; 92-2 at 17.) Because Defendant was still handling Client's recruitment effort, CEO forwarded his reapplication materials to Defendant. (*See* docs. 75 at 20; 92-2 at 17.) Defendant failed to refer him back to Client after receiving his reapplication materials for the Position. (doc. 92-2 at 17.) Defendant sent Client at least four other CVs, but the individual it ultimately hired for the Position was not someone referred by Defendant. (*See* doc. 75 at 45-54; 81 at 35.)

On January 22, 2020, Plaintiff filed a charge of age discrimination with the Equal Employment Opportunity Commission (EEOC), alleging age discrimination by Defendant. (*See* doc. 81 at 113.)  In its response to the charge, Defendant explained its role as a medical personnel placement company and its involvement with Plaintiff. (docs. 75 at 60-62; 81 at 31-33.) It noted that after Client declined to pursue Plaintiff's employment, it "continued to work with [him] to place him at other clients." (docs. 75 at 61; 81 at 32.) Around the same time, Client responded to the separate age discrimination charge that Plaintiff filed against it. (doc. 75 at 19-22.) CEO's response stated that Recruiter shared with her that Plaintiff was "difficult to reach", and that there were "multiple attempts" made to reach out to him before he was finally able to interview him.

(*Id.* at 19-20.) It stated that Recruiter provided a summary profile of Plaintiff, and that after she reviewed it and discussed his interview with Recruiter, she determined that his experience and background did not meet the requirements for the position. (*Id.* at 20.)

After the EEOC dismissed the charge and issued the right to sue letter, Plaintiff filed this lawsuit against Defendant on October 20, 2020. (*See* doc. 3 at 12.) He asserts claims for defamation, fraud, and discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, and he seeks lost wages, benefits, damages, and attorney's fees. (*See id.* at 6-9.) On February 16, 2021, Defendant answered and counterclaimed for attorneys' fees. (*See* doc. 9 at 1, 8.) Both parties move for summary judgment. (*See* docs. 74; 79.)

## II.    EVIDENTIARY OBJECTIONS

Both parties object to portions of each other's exhibits. (*See* docs. 77 at 5-7; 91 at 1-3; 92-2 at 13; 93 at 1-5.)

A party seeking summary judgment may rely on any form of evidence listed in Rule 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "At the summary judgment stage, materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)) (emphasis original); *see also Williams v. The Thrift Store*, No. 4:14CV101, 2015 WL 5578322, at *2 (E.D. Tex. Sept. 22, 2015) (declining to disregard *pro se* plaintiff's exhibit in court's summary judgment analysis because it could be proven up at trial). While the form of the summary judgment evidence need not be admissible, the content of the evidence must meet evidentiary requirements. *See Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017); *Goodwin v. Johnson*, 132 F.3d 162, 186 (5th Cir. 1997); *see*

6

*also Anderson v. Dallas Cty.*, No. 3:05-CV-1248-G, 2007 WL 1148994, at *3 (N.D. Tex. Apr. 18, 2007) (noting "for example, while an affidavit has limited admissibility at trial, it is sufficient evidence to support or defeat a motion for summary judgment even though inadmissible statements in the affidavit, such as hearsay statements, may not be considered by the court").

Federal Rule of Evidence 103(a)(1) requires an objecting party to make specific objections detailing the specific evidence it wishes to strike and stating the specific grounds for striking it. *Tucker v. SAS Inst., Inc.*, 462 F. Supp.2d 715, 722 (N.D. Tex. Nov. 7, 2006) (citing *United States v. Avants*, 367 F.3d 433, 445 (5th Cir. 2004)). "[A] trial court judge must be fully apprised of the grounds of an objection." *Tucker*, 462 F. Supp.2d at 722. Objections lacking specificity do not satisfy the requirements of Rule 103, and a loosely formulated and imprecise objection does not preserve error. *Id.* (citing *United States v. Polasek*, 162 F.3d 878, 883 (5th Cir. 1998)).

A.    **Plaintiff's Objections**

Plaintiff generally objects to the declarations of Recruiter and Wes Willard, the Legal & Risk Advisor for Defendant (Risk Manager).

1.    *Recruiter Declaration*

Plaintiff contends that Recruiter's declaration contains "multiple inaccurate statements … that do not reflect the interactions with [him] and require correction." (*See* docs. 92-2 at 13; 93-1 at 1.) He has not identified specific statements that should be stricken or stated specific grounds for striking them. (*See* doc. 81 at 44-46); *see also* Fed. R. Civ. P. 56(c)(2); *Tucker*, 462 F. Supp.2d at 722 (noting that "[t]he court is not required to review large quanta of evidence to ferret out inadmissible statements"); *Shepherd v. Dallas Cty., Tex.*, No. CIV.A. 3:05-CV-1442-D, 2008 WL 656889, at *6 (N.D. Tex. Mar. 6, 2008) (overruling objections because the movant failed to point

to inadmissible components). Because Plaintiff's generalized objections to Recruiter's declaration do not meet the specificity requirements of Rule 103(1)(a), they are overruled. *See Lee v. Metrocare Servs.*, 980 F. Supp.2d 754, 763 (N.D. Tex. Oct. 30, 2013).

### 2. *Risk Manager Declaration*

Plaintiff contends that Risk Manager has no personal knowledge regarding the events relating to the interview process because he was not involved "in any way" during the interactions between him and Defendant. (*See* doc. 92-2 at 13.)

Federal Rule of Civil Procedure 56(c)(4) provides in relevant part that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Federal Rule of Evidence 602 elaborates on this by explaining that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Personal knowledge may be proved by a witness's or an affiant's own testimony, or reasonably inferred from his position or the nature of his participation in the matters to which he swears. *See id.*; *see also Am. Motorist Ins. Co. v. Southcrest Constr. Inc.*, No. 3:04-CV-2575-M, 2006 WL 995202, *9 (N.D. Tex. April 17, 2006) (citing *DIRECTV v. Budden*, 420 F.3d 521, 529-30 (5th Cir. 2005)). It may include inferences and opinions so long as they are grounded in personal observation and experience. *See United States v. Cantu*, 167 F.3d 198, 204 (5th Cir. 1999).

The Fifth Circuit has held that the testimony of a record custodian or "other qualified witness" is sufficient to lay the foundation for a business record. *United States v. Brown*, 553 F.3d 768, 792 (5th Cir. 2008). "There is no requirement that the witness who lays the foundation be the

8

author of the record or be able to personally attest to its accuracy." *Id.* at 792 (citation and internal quotation marks omitted). "A qualified witness" is simply "one who can explain the record keeping system of the organization and vouch that the requirements of Rule 803(6) are met." *Id.* (finding that there is "no requirement under Rule 803(6) that the witness laying the foundation be able to attest personally to its accuracy") (quotations omitted). The inquiry focuses on whether "the witness's testimony [is] sufficient to support the document's reliability." *Albright v. IBM Lender Bus. Process Servs., Inc.*, No. 4:11-CV-1045, 2013 WL 1089053, at *2 (S.D. Tex. Mar. 14, 2013) (citing *Travland v. Ector Cnty., Tex.*, 39 F.3d 319, 1994 WL 612342, at *4 (5th Cir. Oct. 20, 1994) (per curiam)).

Here, Risk Manager's declaration states that in his position with Defendant, he has become familiar with "the company structure, operations, and the process of referring candidates for employment with clients" and has "access to communications and records kept within [Defendant]'s files." (*See* doc. 81 at 34-35.) As part of his duties, he is the Custodian of Records for Defendant; Exhibits A, B, and C[3] were kept in the regular course of business by an employee or representative of Defendant with personal knowledge, and originals or exact duplicates were submitted with his declaration. (*See id.* at 34.) He has personal knowledge of all facts recited within the declaration and of Defendant's recruiters, "who work to place candidates at job openings." (*See id.*)

Risk Manager's declaration describes how his position and duties allowed him to have

---

[3] The exhibits include: (A) three email job postings to Plaintiff, dated August 3, 2018 to May 21, 2019, from three of Defendant's recruiters; (B) email correspondence between Recruiter and Plaintiff, from August 5, 2019 to August 19, 2019, regarding the CMO position; and (C) an email job posting to Plaintiff from one of Defendant's recruiters on August 26, 2019. (*See* doc. 81 at 36-43.)

personal knowledge of the interactions between Defendant and Plaintiff and the interview process. *See Perez v. Alcoa Fujikura, Ltd.*, 969 F. Supp. 991, 998 (W.D. Tex. June 13, 1997)). Plaintiff's objections to this declaration are overruled.

**B.    Defendant's Objections**

Defendant contends that Plaintiff's exhibits are not proper summary judgment evidence because they are unauthenticated, unsworn, and inadmissible. (*See* docs. 77 at 5-7; 91 at 1-3; 98 at 2.) It also contends that Plaintiff's declaration "contradicts his own deposition testimony, adds questionable information, and asserts outright wrong factual contentions and mistruths." (*See* doc. 98 at 2.) Because Plaintiff's exhibits and declaration, even if considered, do not affect the disposition of either party's motion, Defendant's objections are overruled as moot. *See Cunningham v. Advantix Digital, LLC*, No. 3:19-CV-0210-G, 2020 WL 1915693, at *6 (N.D. Tex. Apr. 20, 2020) (denying as moot defendant's objections to plaintiff's summary judgment evidence); *see also Continental Casualty Co. v. St. Paul Fire & Marine Ins. Co.*, 2006 WL 984690, at *1 n.6 (N.D. Tex. Apr. 14, 2006) (overruling as moot objections to evidence that was not considered by the court in deciding motion for summary judgment).[4]

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no

---

[4]Defendant's reply attaches an appendix containing excerpts of Plaintiff's deposition testimony. (*See* doc. 98-1.) The Local Civil Rules for the Northern District of Texas do not permit the filing of evidence in support of a reply. *See* L.R. 7.1(f) (permitting the filing of a reply brief). A movant is not ordinarily permitted to introduce new evidence in support of a reply because such action deprives the non-movant of a meaningful opportunity to respond. *See Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239-240 (N.D. Tex. July 10, 1991). It is therefore not considered. *See id.* at 240 ("[W]here a movant has injected new evidentiary materials in a reply without affording the non-movant an opportunity for further response, the court [ ] retains the discretion to decline to consider them."). Even if considered, the recommended outcome would remain the same.

genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant bears the burden of proof on an issue, it must "establish beyond peradventure *all* of the essential elements of the claim or defense." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)) (emphasis original). The moving party can also meet its summary judgment burden by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325 (quotations omitted). There is "no genuine issue as to any material fact [where] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Id.* at 324. It must go beyond its pleadings and designate specific facts to show there is a genuine issue for trial. *Id.*; *Anderson*, 477 U.S. at 249.[5] Although the pleadings of a *pro se* litigant

---

[5] "The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ... admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (citing Fed. R. Civ. P. 56(c)(1)).

are to be provided "a liberal construction," *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012), Rule 56 imposes no obligation for a court "to sift through the record in search of evidence to support a party's opposition to summary judgment," *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Parties must "identify specific evidence in the record" supporting challenged claims and "articulate the precise manner in which that evidence supports [those] claim[s]." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

## IV.    AGE DISCRIMINATION

Both parties move for summary judgment on Plaintiff's ADEA discrimination claim. (*See* docs. 74 at 2; 80 at 6.) Plaintiff argues that the evidence demonstrates that Defendant is liable for age discrimination. Defendant argues that Plaintiff cannot satisfy the elements of a prima facie case of age discrimination, and that he cannot establish any evidence of pretext.

The ADEA prohibits arbitrary age discrimination in employment. 29 U.S.C. § 621(b). It makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or

otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *Id.* § 623(a)(1). It also provides that an employment agency may not "fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of such individual's age, or to classify or refer for employment any individual on the basis of such individual's age." *Id.* § 623(b).[6]

Age discrimination under the ADEA may be proven through either direct or circumstantial evidence. *See Nicholson v. Securitas Sec. Servs. USA, Inc.*, 830 F.3d 186, 189 (5th Cir. 2016). Where, as here, a plaintiff offers circumstantial evidence of discrimination, his age discrimination claim is subject to the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Salazar v. Lubbock Cnty. Hosp. Dist.*, 982 F.3d 386, 389 (5th Cir. 2020); *Jackson v. Cal–Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010). "Under this framework, the [plaintiff] must first establish a prima facie case of age discrimination." *Squyres v. Heico Companies, L.L.C.*, 782 F.3d 224, 231 (5th Cir. 2015) (citing *Miller v. Raytheon Co.*, 716 F.3d 138, 144 (5th Cir. 2013)).

To establish a prima facie case of age discrimination in the employment agency context, the plaintiff must show that (1) he belongs to a protected class; (2) he asked or expected the employment agency to refer him for employment for a position for which he was qualified; (3) the employment agency failed or refused to refer him for employment; and (4) persons who were referred or hired were not members of the protected class. *See Champlin v. Experis US, Inc.*, No.

---

[6] An employment agency is defined, in pertinent part, as "any person regularly undertaking with or without compensation to procure employees for an employer". *See* 29 U.S.C. § 630(c). Neither party disputes that Defendant is an employment agency for purposes of this statute.

4:16-CV-421, 2017 WL 635563, at *3 (S.D. Tex. Feb. 16, 2017) (citations omitted); *see also Hill v. Miss. State Employment Serv.*, 918 F.2d 1233, 1238-39 (5th Cir. 1990) (applying *McDonnell Douglas* framework to Title VII disparate treatment claim against employment agency for discriminatory non-referral of a job candidate).

Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employment agency to provide a legitimate, non-discriminatory reason for failing or refusing to refer the plaintiff for employment. *See Moss*, 610 F.3d at 922; *see also Hill*, 918 F.2d at 1239. If the employment agency articulates a legitimate, non-discriminatory reason for the decision, the burden shifts back to the plaintiff to "show that this explanation is pretextual." *Saketkoo v. Administrators of Tulane Educ. Fund*, 31 F.4th 990, 999 (5th Cir. 2022) (citing *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)). "Pretext can be proven by any evidence that casts doubt on the credence of the [defendant's] proffered justification for the adverse employment action." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020).

The plaintiff must then prove by a preponderance of the evidence, either direct or circumstantial, that age was the "but-for" cause of the defendant's adverse decision. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *See Jackson*, 602 F.3d at 378 (citations omitted).

A.    **Prima Facie Case**

Defendant argues that Plaintiff's age discrimination claim cannot survive summary judgment because he cannot bring forward evidence to show that it failed to refer him for the

14

Position. (doc. 80 at 6.)

As noted, to establish a prima facie case of age discrimination against an employment agency, the plaintiff must show that the employment agency refused or failed to refer him for an available position. *See Champlin*, 2017 WL 635563, at *3.

The undisputed summary judgment evidence shows that Recruiter emailed Plaintiff about the Position on August 6, 2019, and that Plaintiff responded with his CV on August 15, 2019. (docs. 75 at 56; 81 at 6, 34, 39-40, 44-45; 92-2 at 15.). When Plaintiff called Recruiter for the screening interview on August 19, 2019, there was discussion about his CV and the absence of Plaintiff's employment history before 2003. (docs. 75 at 58; 81 at 45, 51; 92-2 at 15-16.) It is undisputed that Plaintiff wanted to be referred for the Position and that he raised no objection when told that Recruiter would forward the CV to Client. (docs. 81 at 45; 92-2 at 16.) After Recruiter sent the CV to Client for the Position, CEO declined to go forward with Plaintiff for the Position. (doc. 81 at 45.) Later that same day, Recruiter emailed Plaintiff that Client rejected him for the Position because of "no FQHC experience in recent years." (docs. 75 at 58; 81 at 42.) The summary judgment evidence is sufficient to show that Defendant had referred Plaintiff for employment.

The burden now shifts to Plaintiff to identify evidence in the record that raises a genuine issue of material fact about whether Defendant failed or refused to refer him for employment. Although Plaintiff admits that Defendant referred him to Client after the initial interview, he claims that Recruiter provided CEO "false and negative information" about him and "encouraged her to reject him as a candidate." (doc. 92 at 13.) He fails to identify competent summary judgment evidence in support of this unsubstantiated assertion, however. *See Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (explaining that "conclusional allegations and unsubstantiated

15

assertions may not be relied on as evidence by the nonmoving party" to withstand summary judgment). He provides Client's position statement to the EEOC, which states that Defendant had made "multiple attempts" to reach Plaintiff and that CEO was told by Recruiter that Plaintiff was "difficult to reach" for the interview. (doc. 75 at 19-20.) It also states that after CEO reviewed Plaintiff's summary profile and discussed the phone interview with Recruiter, she determined that his experience and background did not meet the needs for the Position. (*Id.*) Taken in the light most favorable to Plaintiff, this evidence could lead a reasonable jury to conclude that Recruiter influenced CEO's initial assessment of Plaintiff's qualifications. Without more, however, it is not competent evidence to demonstrate that Defendant failed or refused to refer him for employment.

Plaintiff next argues that he submitted a second application for the Position, but Defendant refused to reconsider and refer him to Client. (doc. 92 at 13-14.) He provides his declaration, which states that he sent an updated CV and other materials directly to Client three months after the interview because he believed that he was not "appropriately presented" to Client by Recruiter. (doc. 92-2 at 17.) It also states that Client "sent the reapplication materials back to [Defendant] for reconsideration as [it] was still in charge of the recruitment effort." (*Id.*) He fails to present any evidence showing that he asked Defendant to reconsider him for the Position and to refer his second application back to Client. As discussed, to make out prima facie case of employment agency discrimination, the plaintiff must demonstrate that he "asked or expected the employment agency to refer him for employment." *See Champlin*, 2017 WL 635563, at *3. Plaintiff argues that he "appropriately expect[ed]" that Defendant would have "reconsidered and rereferred" him when it received his second application from Client, but he fails to point to competent evidence to supports this argument. (doc. 92 at 12.) In fact, Plaintiff states in his declaration that he "did not

16

authorize the release of any information or [his] CV to any potential employer through [Defendant] after the [Recruiter] interview." (doc. 92-2 at 17.) He also states that because of his "poor treatment" during the interview, he had unsubscribed to emails from Defendant and would "never interview with [Defendant] again." (*Id.*)

Because there is no genuine issue of material fact on at least one element of his prima facie case for discrimination, Defendant is entitled to summary judgment on Plaintiff's age discrimination claim.

**B.    Legitimate Non-Discriminatory Reason**

Even assuming for purposes of this motion only that Plaintiff had established a prima facie case of discrimination, Defendant offered evidence showing a legitimate non-discriminatory reason for notifying Plaintiff of his rejection for the Position. Recruiter's declaration is sufficient for a reasonable trier of fact to conclude that Client declined to consider Plaintiff for the Position because he lacked recent FQHC[7] experience. (*See* doc. 81 at 45-46.) In the context of a discrimination claim against an employer, the Fifth Circuit has noted that the proffered reason for its employment decision need not be persuasive or even credible, only legitimate and non-discriminatory. *See Bodenheimer v. PPG Indus. Inc.*, 5 F.3d 955, 958 (5th Cir. 1993). As noted, it is undisputed that Defendant is an employment agency and not Plaintiff's prospective employer. (*See* docs. 74 at 2; 78 at 31.) To the extent that employment agencies, like Defendant, must proffer a legitimate, nondiscriminatory reason for their employment referrals of candidates to prospective

---

[7]Generally, an FQHC is a medical facility that provides medical care to "medically underserved" populations. *See Legacy Cmty. Health Servs., Inc. v. Smith*, 881 F.3d 358, 363 (5th Cir. 2018) (citing 42 U.S.C. § 254b(a), (e), (k)).

employers, Defendant has met its summary judgment burden. *See Bodenheimer*, 5 F.3d at 958.

The burden now shifts to Plaintiff to raise a genuine material fact issue by showing that the

proffered reason is a pretext for discrimination.

**C.**    **Pretext**

To establish pretext, a plaintiff "must put forward evidence rebutting each of the non-

discriminatory reasons the [defendant] articulates." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212,

220 (5th Cir. 2001). "A plaintiff may show pretext either through evidence of disparate treatment

or by showing that the [defendant's] proffered explanation is false or unworthy of credence."

*Jackson*, 602 F.3d at 378-79 (citations and quotations omitted). The plaintiff must produce

evidence from which a reasonable jury could conclude by a preponderance of the evidence that his

age was the "but-for" cause of the challenged employment decision. *Gross*, 557 U.S. at 177. A

plaintiff will not establish pretext by relying solely on his subjective belief that discrimination has

occurred. *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 337 (5th Cir. 1997).

Plaintiff argues that his lack of recent FQHC experience, which was Defendant's stated

reason for why Client did not pursue him for the Position, was pretextual because this rationale

did not originate from Client. (doc. 92 at 14.) He relies on Client's position statement to the EEOC,

which does not mention FQHC experience as Client's reason for rejecting him for the Position;

the job postings for the Position, which do not list recent FQHC experience as a prerequisite; and

the CVs of other candidates Defendant referred for the Position, which show that none of them

had FQHC experience. (doc.92-1 at 14-17, 19 22, 45-54, 79.) The undisputed summary judgment

evidence demonstrates that the Position was with Client, that Defendant was retained to recruit

candidates for the Position, and that Client made the decision to not go forward with Plaintiff.

18

While evidence concerning "recent FQHC experience" is relevant in determining whether the proffered reason for Plaintiff not being hired for the Position is pretextual, Plaintiff fails to explain how this evidence demonstrates that any recruiting decision Defendant made about Plaintiff was pretextual.

Evidence that recent FQHC experience was not a job parameter for the Position, and that Plaintiff's lack of recent FQHC experience was not the legitimate reason why Client rejected him, does not equate to pretext as to Defendant. *See Bouvier v. Northrup Grumman Ship Systems, Inc.*, 350 F. App'x 917, 924-25 (5th Cir. 2009) (per curiam) ("The plaintiff has not necessarily proven pretext by showing the facts underlying the employer's reason for the adverse employment action are factually incorrect."); *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991) ("The existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation does not in itself make reasonable an inference that the defendant was not truly motivated by its proffered justification."). "The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1997).

Plaintiff fails to identify any evidence, either circumstantial or direct, that would permit a reasonable jury to believe that any recruitment decisions made by Defendant regarding Plaintiff's consideration for the Position was false, and that illegal discrimination was the actual reason. Because Plaintiff has failed to identify any evidence of pretext, summary judgment should be granted in Defendant's favor with respect to his age discrimination claim. Because Plaintiff has not met his burden of identifying evidence of record sufficient to establish all the elements of an age discrimination claim against Defendant, his motion for summary judgment on that claim

19

should be denied.

## V.     DEFAMATION

Both parties move for summary judgment on Plaintiff's defamation claim. (*See* doc. 74 at

10; doc. 80 at 17.)

"To establish a defamation claim under Texas law, a plaintiff must prove that '(1) the

defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree

of fault regarding the truth of the statement (negligence if the plaintiff is a private individual); and

(4) damages, unless the statement constitutes defamation per se.'" *Smith v. Wal-Mart Stores, Inc.*,

980 F.3d 1060, 1062 (5th Cir. 2020) (quoting *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex.

2017))[8]; *see also Klocke v. Watson*, 597 F.Supp.3d 1019, 1031 (N.D. Tex. 2022) (citing *Innovative*

*Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020) and *In re*

*Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015)), *appeal filed*, No. 22-10348 (5th Cir. April 11, 2022).

A defamatory statement "'tends to injure a person's reputation and thereby expose the person to

public hatred, contempt, ridicule, or financial injury or to impeach any person's honesty, integrity,

virtue, or reputation.'" *Walker v. Beaumont Indep. School Dist.*, 938 F.3d 724, 743 (5th Cir. 2019)

(quoting *Lipsky*, 460 S.W.3d at 593 (in turn citing *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568,

571 (Tex. 1998)). Defamatory statements are published "if they are communicated to a third party

capable of understanding their defamatory connotation and in such a way that the third party did

---

[8] The parties appear to agree that Texas law governs the state law claim; Plaintiff cites to Texas law and Defendant does not dispute its applicability. (*See* docs. 74; 80); *see also CIMC Vehicles Grp. Co. v. Direct Trailer, LP*, No. CIV.A. H-10-709, 2012 WL 4017985, at *9 (S.D. Tex. Aug. 24, 2012), *adopted by* 2012 WL 4018200 (S.D. Tex. Sept. 12, 2012) ("By uniformly relying on Texas law, the parties agree that it applies to their controversy. Absent any indication in the record that any other law should apply, the court applies Texas law.").

so understand." *Crouch v. J.C. Penney Corp.*, 564 F. Supp. 2d 642, 646 (E.D. Tex. Mar. 19, 2008), *aff'd sub nom. Crouch v. J C Penney Corp.*, 337 F. App'x 399 (5th Cir. 2009).

Defendant initially contends that Plaintiff cannot bring forward evidence to support each element of his claim. (*See* doc. 80 at 17-18; doc. 77 at 12.)  It also argues that any statement by Recruiter to CEO that Plaintiff was hard to reach did not constitute a defamation because it was an opinion rather than an objectively verifiable statement of fact. (*See* doc. 80 at 18-19; doc. 77 at 13-14.) By pointing out an absence of evidence to support all elements of Plaintiff's claim, Defendant has met its summary judgment burden. *See Celotex*, 477 U.S. at 325.

The burden now shifts to Plaintiff to identify evidence in the record creating a genuine issue of material fact regarding each element of his defamation claim. To meet his summary judgment burden, Plaintiff points to CEO's position statement to the EEOC, in which she states that Recruiter "shared with [her] that [Plaintiff] was difficult to reach[.]" (*See* doc. 74 at 10-11; doc. 87 at 14-15; doc. 92 at 19.) He contends that Recruiter gave CEO "a completely false and disparaging report regarding [Plaintiff's] availability for the interview."  (*See* doc. 74 at 11; doc. 87 at 15.) He also points to his email correspondence with Recruiter, which he contends shows "[t]here was no difficulty at all in arranging the interview", and that "[u]pon ***finally*** reaching [Plaintiff], the recruiter interviewed him. (*See* doc. 74 at 10, 11; doc. 87 at 14, 15 (*emphasis original*); doc. 92 at 18, 19 (*emphasis original*).)  He also argues that CEO believed Recruiter's statement and relied on it in making her own false statements to the EEOC that her staff also had difficulty reaching Plaintiff because he did not list a telephone number on his resume.  (*See* doc. 74 at 11; doc. 87 at 15; doc. 92 at 19.)  He concludes, without citing to any evidence, that his "reputation was undoubtedly damaged" by the false statement because he was "dismissed from

21

consideration for the [Position]." (See doc. 74 at 11; doc. 87 at 15; doc. 92 at 19.)

A statement that is not verifiable as false is not defamatory. *Klocke*, 597 F.Supp.3d at 1031 (citing *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 624 (Tex. 2018)). Whether a statement constitutes "'an actionable statement of fact or a constitutionally protected expression of opinion' depends on its 'verifiability and the context in which [it was] made.'" *Gateway Logistics Group, Inc., v. Dangerous Goods Mgmt. Australia Pty, Ltd.*, No. H–05–2742, 2008 WL 1883914, at *10 (S.D.Tex. Apr.25, 2008) (quoting *Bentley v. Bunton*, 94 S.W.3d 561, 579, 583 (Tex.2002) (citations omitted). Even a statement that is verifiably false "does not give rise to liability if the entire context in which it was made discloses that it is merely an opinion masquerading as a fact." *Klocke*, 597 F.Supp.3d at 1031 (citing *Tatum*, 554 S.W.3d at 624). "'A statement is considered to be an opinion when, upon consideration of 'the entire context in which it was made,' it cannot be objectively verified.'" *Gateway Logistics Group*, 2008 WL 1883914, at *10 (quoting *Morris v. Blanchette*, 181 S.W.3d 422, 424 (Tex.App.-Waco 2005, no pet.) (citing *Bentley*, 94 S.W.3d at 581 and *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21-22 (1990)). "Texas case law plainly protects those communications that are not objectifiably verifiable." *Burch v. Coca-Cola Co.*, 119 F.3d 305, 325 (5th Cir.1997). "Whether a publication is an actionable statement of fact is a question of law." *Turner Indus. Grp., LLC v. Int'l Union of Operating Eng'rs, Local 450*, 8 F.Supp.3d 896, 912 (S.D. Tex. 2014); *Charalambopoulos v. Grammer*, No. 3:14-CV-2424-D, 2017 WL 606639, at *13 (N.D. Tex. Feb. 15, 2017) (citing *Bentley*, 94 S.W.3d at 580).

Even considering CEO's unauthenticated EEOC position statement, given the entire context in which it was made, Recruiter's statement that Plaintiff was hard to reach is not objectively verifiable as false. Plaintiff does not dispute that Recruiter asked him for a valid

22

telephone number at least three times, that he did not explain to Recruiter why he could not receive telephone calls from Recruiter, and that Recruiter had to wait for Plaintiff to call him.  As a matter law, Recruiter's statement constitutes an opinion rather than an actionable statement of fact.

Additionally, Plaintiff has pointed to no evidence that he suffered damages as a result of the statement.  He has provided no evidence creating a genuine issue of fact concerning whether the statement was the reason that Client did not hire him.  His assertion that Recruiter's statements "undoubtedly damaged" his reputation are insufficient to meet his summary judgment burden. Conclusory allegations of reputational harm will not do. *Mandawala v. Northeast Baptist Hospital*, 16 F.4th 1144, 1154 n. 8 (5th Cir. 2021).

Plaintiff has failed to meet his burden.  His motion for summary judgment on this claim should be denied, and Defendant's motion should be granted.

## VI.    FRAUD

Defendant moves for summary judgment on Plaintiff's fraud claim on grounds that he cannot establish a *prima facie* case. (*See* doc. 79 at 2; doc. 80 at 20-22; 98 at 1.)[9]

To prevail on a fraud claim under Texas law, a plaintiff must prove the following elements:

(1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result. The fourth element has two requirements: the plaintiff must show that it actually relied on the defendant's representation and, also, that such reliance was justifiable.

---

[9] Defendant contends that Plaintiff abandoned the claim in his summary judgment motion by stating that he did not think he could establish a *prima facie* case of fraud without Recruiter's deposition, which he did not obtain, but it moves for summary judgment on the claim "to ensure disposal of all claims against it." (*See* doc. 80 at 19 & n. 14 (citing doc. 74 at 2).) Plaintiff responds that "[a]fter further consideration", this statement was made "in error". (*See* doc. 92 at 19-20.) He does not appear to move for summary judgment on this claim in any filing, however.

*CBE Group , Inc. v. Lexington Law Firm*, 993 F.3d 346, 350 (5th Cir. 2021) (quoting *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018)).

Defendant contends that Plaintiff cannot bring forward evidence to establish his fraud claim as pleaded because he bases it on alleged material representations made to Client and the EEOC, rather than to him. (*See* doc. 80 at 20-21 (citing doc. 3; doc. 81 at 9-10).) It also contends that there is no evidence that the representations were made to these parties with the intent that Plaintiff would rely on them, and it points to his own deposition testimony that he did not rely on the representations. (*See id.* at 21 (citing doc. 81 at 9-11, 34-36).) By pointing out an absence of evidence to support all elements of Plaintiff's claim, Defendant has met its summary judgment burden. *See Celotex*, 477 U.S. at 325.

The burden now shifts to Plaintiff to identify evidence in the record creating a genuine issue of material fact regarding whether Defendant is entitled to summary judgment on his fraud claim. In response to Defendant's motion, Plaintiff alleges that (1) Defendant made a false statement to him that Client rejected him as a candidate because he had "no recent FQHC experience", (2) Recruiter knew the statement was false or made it recklessly without knowledge of the truth, (3) Recruiter made the statement with the intent that Plaintiff act on it by believing he had been rejected as a candidate for lack of recent FQHC experience, (4) Plaintiff relied on the statement; and (5) the statement caused him injury. (*See* doc. 92 at 19-20.)

Even considering this new basis for his fraud claim,[10] Plaintiff has not met his burden. As

---

[10] Defendant argues that Plaintiff's response attempts to change the basis for his fraud claim, and that the attempted new narrative is an untimely attempt to amend his complaint. (*See* doc. 98 at 10.) As a general rule, claims and allegations raised for the first time in a response to a dispositive motion are not properly before the court. *See*

noted, the responding party on summary judgment must "identify *specific evidence* in the record" supporting challenged claims and "articulate the *precise manner* in which that evidence supports [those] claim[s]." *Ragas*, 136 F.3d at 458 (emphasis added) (citing *Forsyth*, 19 F.3d at 1537). Although he attaches 85 pages of exhibits to his response, Plaintiff has neither identified specific evidence in the record nor articulated the precise manner in which it supports each element of his fraud claim. *See Williams v. Valenti*, 432 F. App'x 298, 303 (5th Cir. 2011) (per curiam) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court.") (citation omitted). His vague and unsupported assertions of the elements are insufficient to create a genuine issue of material fact sufficient to withstand summary judgment. *See Topalian*, 954 F.2d at 1131; *Valderas*, 937 F.3d at 388; *see also Metro Hosp. Partners, Ltd. v. Lexington Ins. Co.*, 84 F. Supp. 3d 553, 574 (S.D. Tex. Jan. 29, 2015) ("Putting aside the fact that the allegations in the … complaint fail to satisfy Rule 12(b), much less Rule 9(b), [Plaintiff] has not pointed to evidence in support of this claim from which a reasonable jury could find [Defendant] liable."). Defendant's motion for summary judgment on this claim should be granted.[11]

---

*Cutrera v. Board of Supervisors*, 429 F.3d 108, 113 (5th Cir. 2005) (explaining that a claim raised for the first time in a response to a motion for summary judgment is not properly before the court). Nevertheless, the Fifth Circuit has held that courts should construe new allegations and theories in responses to dispositive motions as motions to amend. *See Debowale v. U.S. Inc.*, 62 F.3d 395 (5th Cir. 1995) (per curiam) (holding that "[t]he district court should have construed [the plaintiff's] Bivens claim, raised for the first time in his response to the summary judgment motion, as a motion to amend the complaint under [Rule] 15(a) and granted it")."This is particularly true where ... the litigant is *pro se* and has not yet made any amendments to h[is] complaint." *Riley v. Sch. Bd. Union Par.*, 379 F. App'x 335, 341 (5th Cir. 2010). In an abundance of caution, Plaintiff's new allegations in his response are construed as a motion to amend, the motion is **GRANTED**, and the new allegations are considered.

[11]  To the extent that Plaintiff's summary judgment motion may be liberally construed as also seeking summary judgment on his fraud claim, it should be denied for these same reasons.

## VII.    RECOMMENDATION

Plaintiff's motion for summary judgment should be **DENIED**, Defendant's motion for summary judgment should be **GRANTED**, and all of Plaintiff's claims against Defendant should be dismissed with prejudice.[12]

SO **RECOMMENDED** on this 24th day of February, 2023.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[12] In the conclusion and prayer sections of its briefs, Defendant requests that Plaintiff be designated as a vexatious litigant and ordered to pay its fees in this case, but it states that it will brief the requests "separately". (*See* doc. 79 at 3 n.1; doc. 80 at 23 n.17; doc. 98 at 12.) Because Defendant does not brief these issues in connection with its summary judgment motion, they are not addressed.